RENDERED: MAY 8, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0211-ME

I.R., III                                                                            APPELLANT


|  | APPEAL FROM GREENUP CIRCUIT COURT |
|---|---|
| v. | HONORABLE JEFFREY L. PRESTON, JUDGE |
|  | ACTION NO. 24-J-00071-001 |


COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; C.T.;
COMMONWEALTH OF KENTUCKY,
OFFICE OF GREENUP COUNTY
ATTORNEY; D.R.; M.T., A MINOR
CHILD; AND S.T.                                                          APPELLEES

AND

NO. 2025-CA-0214-ME

I.R., III                                                                            APPELLANT


|  | APPEAL FROM GREENUP CIRCUIT COURT |
|---|---|
| v. | HONORABLE JEFFREY L. PRESTON, JUDGE |
|  | ACTION NO. 24-J-00073-001 |


COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND

FAMILY SERVICES;
COMMONWEALTH OF KENTUCKY,
OFFICE OF GREENUP COUNTY
ATTORNEY; D.R.; AND E.R., A
MINOR CHILD                                                          APPELLEES

AND


NO. 2025-CA-0215-ME


I.R., III                                                           APPELLANT



APPEAL FROM GREENUP CIRCUIT COURT
v.        HONORABLE JEFFREY L. PRESTON, JUDGE
ACTION NO. 24-J-00075-001



COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; B.R., A MINOR
CHILD; COMMONWEALTH OF
KENTUCKY, OFFICE OF GREENUP
COUNTY ATTORNEY; AND D.R.                                           APPELLEES

AND


NO. 2025-CA-0223-ME


I.R., III                                                           APPELLANT



APPEAL FROM GREENUP CIRCUIT COURT
v.        HONORABLE JEFFREY L. PRESTON, JUDGE
ACTION NO. 24-J-00072-001

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES;
COMMONWEALTH OF KENTUCKY,
OFFICE OF GREENUP COUNTY
ATTORNEY; D.R.; AND D.R., A
MINOR CHILD                                                    APPELLEES

AND

NO. 2025-CA-0224-ME

I.R., III                                                         APPELLANT

APPEAL FROM GREENUP CIRCUIT COURT
v.        HONORABLE JEFFREY L. PRESTON, JUDGE
ACTION NO. 24-J-00069-001

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; A.R., A MINOR
CHILD; COMMONWEALTH OF
KENTUCKY, OFFICE OF GREENUP
COUNTY ATTORNEY; AND D.R.                                      APPELLEES

AND

NO. 2025-CA-0225-ME

I.R., III                                                         APPELLANT

APPEAL FROM GREENUP CIRCUIT COURT
v.        HONORABLE JEFFREY L. PRESTON, JUDGE
ACTION NO. 24-J-00070-001

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES;
COMMONWEALTH OF KENTUCKY,
OFFICE OF GREENUP COUNTY
ATTORNEY; D.R.; AND I.R., IV, A
MINOR CHILD                                                        APPELLEES


## OPINION
## AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ACREE AND MCNEILL, JUDGES.

ACREE, JUDGE:  This consolidated appeal arises from the Greenup Circuit Court,
Family Division's removal of six minor children from the home of I.R. III (Father),
who is the adoptive father of five of the children, and was a foster parent to M.R.
The children were removed pursuant to a dependency, neglect, and abuse petition
filed by the Cabinet for Health and Family Services (CHFS).  We affirm.

The family court found Father sexually abused A.R. and M.R.,
physically abused I.R. IV, and presented a risk of physical abuse to the five
children other than I.R. IV.

Father challenges the family court's factual findings.  In such cases as
these, our Supreme Court said:

A family court's findings of fact in a DNA action shall not be set aside unless clearly erroneous. A finding of fact is clearly erroneous if it is not supported by substantial evidence, which is evidence sufficient to induce conviction in the mind of a reasonable person. If the family court's findings of fact were supported by substantial evidence, and it applied the correct law, its decision will not be disturbed absent an abuse of discretion. An abuse of discretion occurs when the family court's decision is unreasonable or unfair. Thus, in reviewing the decision of the family court, the test is not whether the appellate court would have decided it differently, but whether the findings of the family court are clearly erroneous, whether it applied the correct law, or whether it abused its discretion.

*M.C. v. Cabinet for Health and Family Servs.*, 614 S.W.3d 915, 921 (Ky. 2021) (internal quotation marks and citations omitted).

We focus on the evidence upon which the family court based its judgment because, so long as what the family court saw and heard satisfies our understanding of substantial evidence, the quantum and quality of Father's evidence will not support reversing the judgment.

CHFS's involvement began when A.R. and M.R. ran away from home. A.R., age 15, testified at the hearing.[1] A.R. testified she was eight years old when she was placed in Father's home. A.R. testified that on the night she ran away with M.R., the children were in her room, and Father came in and attempted

---

[1] Video Record (V.R.) 12/17/24 at 10:38:50 A.M.

to "pants" B.R.—*i.e.*, to pull B.R.'s pants down to her knees—and A.R. tried to stop him. She testified Father grew angry and "dropped" B.R., who Father had been dragging by her ankles. She testified that Father later called her into his room, where she told him she thought it was "weird" he was "'pantsing' all of us girls." A.R. testified Father would get mad if the girls changed their clothes in the bathroom instead of in front of him, and Father would also get angry if they showered in a guest shower (a shower with opaque glass), rather than the bathroom that connected the girls' bedrooms (a shower with clear glass). She testified that Father forced one of the other female children, E.R., to try on her new school clothes in front of him, rather than go to the bathroom to change.

A.R. also testified that Father would demand she let him rub lotion on her. She said Father would rub lotion on her in his bedroom, while Mother was at work. She testified that she was nude when he did this because it happened "every time I got out of the shower." A.R. testified Father would say things like, "This is building our trust," and "It's making our bond stronger," while rubbing lotion on her. She testified when Father put lotion on her, he touched her "everywhere," including her "privates." A.R. believed she was Father's only victim until M.R. confessed to her that Father was asking M.R. for explicit pictures of herself.

M.R., age 12, testified at the hearing that she and A.R. ran away because Father would "touch [A.R.], like, all the time" and "would rub up on her,

stuff like that." She testified that Father walked in on her while showering and that she was "weirded out" by it, and that after her shower, Father came in and began "touching her and stuff." She testified Father rubbed lotion on her and told her it would bring them "closer together" and assured her it was something "fathers and daughters do." M.R. testified it "kept going on." She testified to breaking down in tears and being "scared" on one of the occasions. Father responded by threatening to shoot her if she told anybody about it.

M.R. testified that when Father put lotion on her, he touched her "everywhere," including her breasts and "private parts." M.R. testified that she was "ten or eleven" the first time Father had done this to her. M.R. testified Father collected the kids' phones every night before bed, and that three days before she and A.R. ran away, Father had asked her to take pictures of herself on her phone so he could look at them at night. M.R. testified that Father asked her to take pictures of her "private parts." M.R. testified that Father had put his hand on her vagina, and then "stuck his fingers in me." M.R. testified Father would touch "both" the outside and inside of her body, beginning when she was ten years old.

Father argues the finding of sexual abuse requires a showing that the touching was for the "purpose of sexual stimulation of the perpetrator or another person." (Appellant's Br. 6). Double negative aside, Father says, "[T]here has

been no showing that neither A.R., M.R., nor the father received any sexual stimulation or gratification." (*Id.*) We disagree.

We will set apart the misguided notion that his victims' gratification can somehow be a factor here. The facts are Father misused the power of his parental authority to compel minor girls he adopted to be naked in his presence, to rub lotion on their naked bodies, to touch their "private parts," and to use his fingers to penetrate the vagina of at least one of them. If there is any conceivable inference to be drawn here other than that Father's purpose was to seek sexual gratification, it can only be he was grooming them for that very purpose. "[L]ogic, like common sense, must not be a stranger in the house of the law." *Southworth v. Commonwealth*, 435 S.W.3d 32, 45 (Ky. 2014) (internal quotation marks and citation omitted).

Father next argues the family court erred in finding he physically abused I.R. IV because "[p]hysical discipline of a child is not abuse." (Appellant's Br. 7). He cites no authority for concluding discipline and abuse are, necessarily and legally, mutually exclusive concepts, and he insists any injuries were "the result of accidental means." (Appellant's Br. 7). I.R. IV's testimony persuaded the family court otherwise.

I.R. IV, age 14, testified that Father inflicted violence upon his body resulting in physical harm. He said he was "dragged" up a hill and into the house,

and in I.R. IV's bedroom, Father "beat my nose in on the floor, until I got a bloody nose." I.R. IV also testified that Father violently pulled off of a lawnmower while he cut the grass and on other occasions would "beat on me" to discipline him. These are not accidental occurrences.

Father's argument is nothing more than an attack on the credibility of I.R. IV's testimony. However, assessing the credibility of witnesses, absent an abuse of discretion, is the province of the family court. As with the previous argument, the family court did not make strained inferences; here, the family court simply believed what the child said.

Tellingly, Father insists "[t]he evidence specifically shows that if the father was retraining I.R. IV or defending himself from [I.R. IV's] attack, any injury would have been caused by accidental means." The family court did not believe that explanation and it was the family court's purview and prerogative to reject Father's interpretation of these episodes as lacking verity.

Father finally argues there was no substantial evidence to support a finding the three younger children (who did not testify) were at risk of harm. He argues their mere presence in a home where all of this was occurring is insufficient to support a finding they were at risk of harm, insisting such a finding is purely speculative. (Appellant's Br. 8). We are not persuaded by this argument.

The family court made findings that sexual abuse and physical abuse had already occurred in the home. The family court did not speculate that the children were at risk; the family court recognized the children were already in harm's way. Father directs us to *C.L. v. Cabinet for Health and Family Services*, but that was a case in which we ruled CHFS had not presented substantial evidence because most of the testimony related to mere "concerns" about the mother and was "impermissibly vague." 653 S.W.3d 599, 609 (Ky. App. 2022). In this matter, the detailed testimony of the children and other witnesses[2] portrayed actual harm, not mere concern about theoretical future harm. The family court did not err in finding Father posed a risk of physical abuse to all the children.

Accordingly, we affirm the family court's January 14, 2025 Order.

ALL CONCUR.

BRIEF FOR APPELLANT:

Marie E. Troxler
Russell, Kentucky

BRIEF FOR APPELLEE:

Kevin Martz
Covington, Kentucky

---

[2] Given the nature of our review, we have focused on only a portion of the record, which is sufficient to sustain the family court's findings, but the record includes additional support for the family court's findings from other witness.